# EXHIBIT A

**MORTGAGE LOAN PURCHASE AND
INTERIM SERVICING AGREEMENT**

**DLJ MORTGAGE CAPITAL, INC.**
Purchaser

and

**SUNSET MORTGAGE COMPANY, LP**
Seller

Dated as of October 1, 2004

TABLE OF CONTENTS

Page

SECTION 1.        Definitions. ...................................................................................................1

SECTION 2.        Agreement to Purchase. ..................................................................................10

SECTION 3.        Mortgage Loan Schedule..................................................................................10

SECTION 4.        Purchase Price. ...............................................................................................10

SECTION 5.        Examination of Mortgage Files. ......................................................................11

SECTION 6.        Conveyance from Seller to Purchaser................................................................11
    Subsection 6.01.     Conveyance of Mortgage Loans; Possession of Mortgage Files.........................11
    Subsection 6.02.     Books and Records..........................................................................................11
    Subsection 6.03.     Delivery of Mortgage Loan Documents..............................................................12

SECTION 7.        Seller's Servicing Obligations. ........................................................................14

SECTION 8.        Representations, Warranties and Covenants of the Seller; Remedies for Breach.........14
    Subsection 8.01.     Representations and Warranties Respecting the Seller. .....................................14
    Subsection 8.02.     Representations and Warranties Regarding Individual Mortgage Loans...........16
    Subsection 8.03.     Remedies for Breach of Representations and Warranties. ...............................26
    Subsection 8.04.     Early Payment Default. ..................................................................................28
    Subsection 8.05.     Premium Recapture. ......................................................................................28
    Subsection 8.06.     Acknowledgement of Anti-Predatory Lending Policies. ...................................28

SECTION 9.        Cooperation with Pass-Through Transfers and Whole Loan Transfers......................28

SECTION 10.       Closing. .........................................................................................................30
    Subsection 10.01.    Conditions to Purchaser's Obligations..............................................................30

SECTION 11.       Closing Documents...........................................................................................31

SECTION 12.       Costs; Assignments..........................................................................................32

SECTION 13.       The Seller........................................................................................................32
    Subsection 13.01.    Indemnification. ............................................................................................32
    Subsection 13.02.    Merger or Consolidation of the Seller...............................................................33
    Subsection 13.03.    Limitation on Liability of the Seller and Others. ...............................................33
    Subsection 13.04.    Seller Not to Resign. ......................................................................................34

Subsection 13.05.   No Transfer of Servicing. ...................................................34

SECTION 14.   Default. ...................................................................................34
Subsection 14.01.   Events of Default. ..............................................................34
Subsection 14.02.   Waiver of Defaults. ............................................................35

SECTION 15.   Termination; Servicing Transfer. ..............................................36

SECTION 16.   Successor to the Seller. .............................................................36

SECTION 17.   Mandatory Delivery; Grant of Security Interest. ......................37

SECTION 18.   Notices. ...................................................................................37

SECTION 19.   Severability Clause. ...................................................................38

SECTION 20.   Counterparts. ..........................................................................38

SECTION 21.   Governing Law. ........................................................................38

SECTION 22.   Intention of the Parties. .............................................................38

SECTION 23.   Successors and Assigns. ............................................................38

SECTION 24.   Waivers. ....................................................................................38

SECTION 25.   Exhibits. ....................................................................................39

SECTION 26.   General Interpretive Principles. ..................................................39

SECTION 27.   Reproduction of Documents. .....................................................39

SECTION 28.   Nonsolicitation. .........................................................................39

SECTION 29.   Survival. ....................................................................................39

SECTION 30.   Further Agreements and Assurances. .........................................39

SECTION 31.   Amendment. ..............................................................................40

SECTION 32.   Recordation of Agreement. ........................................................40

SECTION 33.   Confidentiality. .........................................................................40

SECTION 34.   Recordation of Assignments of Mortgage. .................................40

SECTION 35.   No Partnership. .........................................................................40

SECTION 36.   Entire Agreement. ......................................................................40

**Exhibits**

Exhibit 1        Assignment and Conveyance
Exhibit 2        Contents of Each Mortgage File
Exhibit 3        Seller Underwriting Guidelines
Exhibit 4        Form of Custodial Account Letter Agreement
Exhibit 5        Reserved
Exhibit 6        Escrow Account Letter Agreement
Exhibit 7        Form of Officer's Certification
Exhibit 8        Security Release Certification
Exhibit 9        Security Release Certification
Exhibit 10       Servicing Addendum
Exhibit 11       Form of Opinion of Counsel to Seller
Exhibit 12       Form of Term Sheet
Exhibit 13       Form of Monthly Remittance Advice
Exhibit 14       Servicing Transfer Instructions
Exhibit 15       Form of Bring Down Letter
Exhibit 16       Form of Monthly Servicing Report

MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT

This is a MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT (the "Agreement"), dated as of October 1, 2004, by and between DLJ Mortgage Capital, Inc. having an office at c/o Credit Suisse First Boston LLC, Eleven Madison Avenue, New York, New York 10010 (the "Purchaser") and Sunset Mortgage Company, LP, having an office at 5000 SW Meadows Road, #131, Lake Oswego, OR 97035 (the "Seller").

W I T N E S S E T H :

WHEREAS, the Seller desires to sell, from time to time, to the Purchaser, and the Purchaser desires to purchase, from time to time, from the Seller, certain conventional fixed and adjustable rate residential first and second lien mortgage loans as described herein on a servicing released basis, and which shall be delivered as whole loans;

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first or second lien on a residential dwelling located in the jurisdiction indicated on the Mortgage Loan Schedule;

WHEREAS, the Purchaser and the Seller wish to prescribe the manner of the conveyance, interim servicing and control of the Mortgage Loans.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

SECTION 1.    Definitions.   For purposes of this Agreement the following capitalized terms shall have the respective meanings set forth below:

Accepted Servicing Practices:   With respect to any Mortgage Loan, those mortgage servicing practices (including collection procedures) of prudent mortgage banking institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, and which are in accordance with Fannie Mae servicing practices and procedures, for MBS pool mortgages, as defined in the Fannie Mae guides including future updates.

Adjustable Rate Mortgage Loan:   A Mortgage Loan which provides for adjustments to the Mortgage Interest Rate from time to time in accordance with the terms of the related Mortgage Note.

Adjustment Date:   With respect to each Adjustable Rate Mortgage Loan, the date set forth in the related Mortgage Note on which the Mortgage Interest Rate on the Mortgage Loan is adjusted in accordance with the terms of the Mortgage Note.

Agreement:   This Mortgage Loan Purchase and Interim Servicing Agreement including all exhibits, schedules, amendments and supplements hereto.

Appraised Value:   With respect to any Mortgaged Property, the lesser of (i) the value thereof as determined by an appraisal made for the originator of the Mortgage Loan at the time of origination of the Mortgage Loan by an appraiser who met the underwriting requirements of the

originator, and (ii) the purchase price paid for the related Mortgaged Property by the Mortgagor with the proceeds of the Mortgage Loan, provided, however, in the case of a Refinanced Mortgage Loan, such value of the Mortgaged Property is based solely upon the value determined by an appraisal made for the originator of such Refinanced Mortgage Loan at the time of origination of such Refinanced Mortgage Loan by an appraiser who met the underwriting requirements of the originator.

Assignment and Conveyance:    The assignment and conveyance of the Mortgage Loans to be purchased on the applicable Closing Date in the form set forth in Exhibit 1 hereto.

Assignment of Mortgage:    An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to give record notice of the sale of the Mortgage to the Purchaser.

BPO: A broker's price opinion with respect to a Mortgaged Property.

Business Day:  Any day other than a Saturday or Sunday, or a day on which banking and savings and loan institutions in the State of New York are authorized or obligated by law or executive order to be closed.

Cash-Out Refinancing:  A Refinanced Mortgage Loan the proceeds of which were in excess of the principal balance of any existing first mortgage on the related Mortgaged Property and related closing costs, and were used to pay any such existing first mortgage, related closing costs and subordinate mortgages on the related Mortgaged Property.

Closing Date:  The Closing Date as specified in the related Term Sheet.

Closing Documents:  The documents required pursuant to Section 11.

Combined Loan-to-Value Ratio or CLTV:  With respect to any Second Lien Mortgage Loan, the sum of the original principal balance of such Mortgage Loan and the outstanding principal balance of any related first lien as of the date of origination of the Mortgage Loan, divided by the Appraised Value of the Mortgaged Property as of the origination date.

Code:  The Internal Revenue Code of 1986, as amended, or any successor statute thereto.

Condemnation Proceeds:  All awards, compensation and settlements in respect of a taking of all or part of a Mortgaged Property by exercise of the power of condemnation or the right of eminent domain.

Credit Grade:  As defined in the Seller's Underwriting Guidelines, attached hereto as Exhibit 3.

Custodial Account:  The separate trust account or accounts, each of which shall be an Eligible Account, created and maintained pursuant to this Agreement, which shall be entitled "_____, in trust for DLJ Mortgage Capital, Inc., Fixed and Adjustable Rate Mortgage Loans, P&I Account."

Custodial Agreement:  The agreement governing the retention of the originals of each Mortgage Note, Mortgage, Assignment of Mortgage and other Mortgage Loan Documents.

Custodian: Each custodian designated by the Purchaser from time to time.

Cut-off Date:  The Cut-off Date as specified in the related Term Sheet.

Determination Date:  With respect to each Remittance Date, the Business Day preceding such Remittance Date.

Due Date:  The day on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

Due Period:  With respect to each Remittance Date, the period commencing on the second day of the month preceding the month of such Remittance Date and ending on the first day of the month of such Remittance Date.

Eligible Account:  Either (i) an account or accounts maintained with a federal or state chartered depository institution or trust company the short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is a subsidiary of a holding company, the short-term unsecured debt obligations of such holding company) are rated A-1 by Standard & Poor's Ratings Group or Prime-1 by Moody's Investors Service (or a comparable rating if another rating agency is specified by the Purchaser by written notice to the Seller) at the time any amounts are held on deposit therein, or (ii) an account or accounts the deposits in which are fully insured by the FDIC.

Equity:  With respect to any Second Lien Mortgage Loan, the Appraised Value, less the unpaid principal balance of the related first lien.

Equity Loan-to-Value Ratio:  With respect to any Second Lien Mortgage Loan, the original principal balance of such Second Lien Mortgage Loan, divided by the Equity.

Escrow Account:  The separate trust account or accounts, each of which shall be an Eligible Account, created and maintained pursuant to this Agreement which shall be entitled "_____, in trust for the Purchaser and various Mortgagors, Fixed and Adjustable Rate Mortgage Loans, T&I Account."

Escrow Payments:  With respect to any Mortgage Loan, the amounts constituting ground rents, taxes, assessments, water charges, sewer rents, municipal charges, mortgage insurance premiums, fire and hazard insurance premiums, condominium charges, and other payments as may be required to be escrowed by the Mortgagor with the Mortgagee pursuant to the terms of any Mortgage Note, Mortgage or any other document.

Event of Default:  Any one of the events enumerated in Subsection 14.01.

Fannie Mae:  Fannie Mae or any successor thereto.

FDIC:  The Federal Deposit Insurance Corporation or any successor thereto.

FICO Score:  With respect to each Mortgage Loan, the statistical credit score obtained by the related lender in connection with the loan application to help assess the related Mortgagor's creditworthiness.

Final Recovery Determination:  With respect to any defaulted Mortgage Loan or any REO Property (other than a Mortgage Loan or REO Property purchased by the Seller pursuant to this Agreement), a determination made by the Seller that all Insurance Proceeds, Liquidation Proceeds and other payments or recoveries which the Seller, in its reasonable good faith judgment, expects to be finally

recoverable in respect thereof have been so recovered.  The Seller shall maintain records, prepared by a Servicing Officer of the Seller, of each Final Recovery Determination.

FIRREA:  The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, as amended and in effect from time to time.

Fixed Rate Mortgage Loan:  A Mortgage Loan which bears a fixed Mortgage Interest Rate during the life of the loan.

Freddie Mac:  Freddie Mac or any successor thereto.

GAAP:  Generally accepted accounting principles as in effect from time to time in the United States of America.

Gross Margin:  With respect to any Adjustable Rate Mortgage Loan, the fixed percentage amount set forth in the related Mortgage Note and the related Mortgage Loan Schedule that is added to the Index on each Adjustment Date in accordance with the terms of the related Mortgage Note to determine the new Mortgage Interest Rate for such Mortgage Loan.

Index:  With respect to any Adjustable Rate Mortgage Loan, the index identified on the Mortgage Loan Schedule and set forth in the related Mortgage Note for the purpose of calculating the interest rate thereon.

Initial Periodic Rate Cap:  With respect to each Adjustable Rate Mortgage Loan and the first Adjustment Date therefor following the origination date thereof, a number of percentage points per annum that is set forth in the related Mortgage Loan Schedule and in the related Mortgage Note, which is the maximum amount by which the Mortgage Interest Rate for such Mortgage Loan may increase (without regard to the Lifetime Mortgage Interest Rate Cap) or decrease (without regard to the Lifetime Mortgage Interest Rate Floor).

Insurance Proceeds:  With respect to each Mortgage Loan, proceeds of any insurance policy insuring the related Mortgaged Property.

Insured Depository Institution:  The meaning ascribed to such term by Section 1813(c)(2) of Title 12 of the United States Code, as amended from time to time.

Interim Servicing Period:  With respect to any Mortgage Loan, the period during which the Seller shall service the Mortgage Loans on behalf of the Purchaser or its designee in accordance with the provisions of this Agreement, commencing on the related Closing Date and ending on the applicable Servicing Transfer Date.

Interest Only Mortgage Loan:  A Mortgage Loan that only requires payments of interest for a period of time specified in the related Mortgage Note.

Legal File:  With respect to each Mortgage Loan, the file consisting of the Mortgage Loan Documents.

Lifetime Mortgage Interest Rate Cap:  With respect to each Adjustable Rate Mortgage Loan, the rate that is set forth on the related Mortgage Loan Schedule and in the related Mortgage Note which is the maximum interest rate to which the Mortgage Interest Rate on such Mortgage Loan may be increased over the life of the loan.

-4-

Lifetime Mortgage Interest Rate Floor: With respect to each Adjustable Rate Mortgage Loan, the rate that is set forth on the related Mortgage Loan Schedule and in the related Mortgage Note which is the minimum interest rate to which the Mortgage Interest Rate on such Mortgage Loan may be decreased over the life of the loan.

Liquidation Proceeds: Amounts, other than Insurance Proceeds and Condemnation Proceeds, received in connection with the liquidation of a defaulted Mortgage Loan through trustee's sale, foreclosure sale or otherwise, other than amounts received following the acquisition of REO Property.

Loan-to-Value Ratio or LTV: With respect to any Mortgage Loan as of origination, the ratio on such date of the outstanding principal balance of such Mortgage Loan to the Appraised Value of the related Mortgaged Property as of the origination date.

MERS: Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

MERS Mortgage Loan: Any Mortgage Loan registered with MERS on the MERS System.

MERS System: The system of recording transfers of mortgages electronically maintained by MERS.

MIN: The Mortgage Identification Number for any MERS Mortgage Loan.

MOM Loan: Any Mortgage Loan as to which MERS is acting as mortgagee, solely as nominee for the originator of such Mortgage Loan and its successors and assigns.

Monthly Advance: The portion of the Monthly Payment delinquent with respect to each Mortgage Loan at the close of business on the Determination Date required to be advanced by the Seller pursuant to Subsection 7.31 of Exhibit 10 on the Business Day immediately preceding the Remittance Date of the related month.

Monthly Payment: With respect to any Mortgage Loan, the scheduled combined payment of principal and interest payable by a Mortgagor under the related Mortgage Note on each Due Date.

Mortgage: The mortgage, deed of trust or other instrument creating a first or second lien on the Mortgaged Property securing the Mortgage Note.

Mortgagee: The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

Mortgage File: The items pertaining to a particular Mortgage Loan referred to in Exhibit 2 annexed hereto, and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

Mortgage Interest Rate: With respect to each Mortgage Loan, the annual rate at which interest accrues on such Mortgage Loan from time to time in accordance with the provisions of the related Mortgage Note.

Mortgage Loan: Each fixed rate or adjustable rate mortgage loan sold, assigned and transferred to the Purchaser pursuant to this Agreement and identified on the Mortgage Loan Schedule, which Mortgage Loan includes without limitation the Mortgage File, the Monthly Payments, Principal Prepayments, Prepayment Penalties, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, proceeds realized from an REO Disposition, Servicing Rights, any escrow accounts related to such mortgage loan and all other rights, benefits, proceeds and obligations arising from or in connection with such mortgage loan.

Mortgage Loan Documents: The documents listed in Subsection 6.03 pertaining to any Mortgage Loan.

Mortgage Loan Schedule: The schedule of Mortgage Loans annexed as Exhibit A of the Assignment and Conveyance in both hard copy and electronic format, such schedule setting forth the following information with respect to each Mortgage Loan (unless modified by Purchaser): (1) the Seller's Mortgage Loan identifying number; (2) the Mortgagor's first and last name; (3) the street address of the Mortgaged Property including the state and zip code; (4) a code indicating whether the Mortgaged Property is owner-occupied; (5) the type of Residential Dwelling constituting the Mortgaged Property; (6) the original months to maturity; (7) the origination date of the Mortgage Loan and the remaining months to maturity from the related Cut-off Date, based on the original amortization schedule; (8) the Appraised Value and purchase price of the Mortgaged Property and the Loan-to-Value Ratio at origination; (9) the Mortgage Interest Rate in effect immediately following the related Cut-off Date; (10) the date on which the first Monthly Payment was due on the Mortgage Loan; (11) the stated maturity date; (12) the amount of the Monthly Payment at origination; (13) the amount of the Monthly Payment as of the related Cut-off Date; (14) the last Due Date on which a Monthly Payment was actually applied to the unpaid Stated Principal balance of the Mortgage Loan; (15) the original principal amount of the Mortgage Loan; (16) the Stated Principal Balance of the Mortgage Loan as of the related Cut-off Date; (17) a code indicating the purpose of the loan (i.e., purchase financing, Rate/Term Refinancing, Cash-Out Refinancing); (18) the Mortgage Interest Rate at origination; (19) whether or not the Mortgage Loan has a prepayment penalty and if so, the duration of such penalty; (20) a code indicating the documentation style; (21) Credit Grade; (22) the Mortgagor's FICO Score; (23) a code indicating whether or not the Mortgage Loan is the subject of Primary Mortgage Insurance Policy and the name of the related insurance carrier; (24) a code indicating whether or not the Mortgage Loan is a balloon loan; (25) the loan type (i.e. fixed, adjustable; 2/28, 3/27, 5/25, etc.); (26) the debt-to-income ratio; (27) whether the Mortgage Loan is classified as a high cost loan under Section 32 of the Home Ownership and Equity Protection Act of 1994 or a high cost loan under North Carolina Law; (28) with respect to each Adjustable Rate Mortgage Loan, the first Adjustment Date; (29) with respect to each Adjustable Rate Mortgage Loan, the Gross Margin; (30) with respect to each Adjustable Rate Mortgage Loan, the Lifetime Mortgage Interest Rate Cap under the terms of the Mortgage Note; (31) with respect to each Adjustable Rate Mortgage Loan, the Lifetime Mortgage Interest Rate Floor under the terms of the Mortgage Note; (32) with respect to each Adjustable Rate Mortgage Loan, the Initial Periodic Rate Cap; (33) with respect to each Adjustable Rate Mortgage Loan, the Periodic Rate Cap; (34) with respect to each Adjustable Rate Mortgage Loan, the first Adjustment Date immediately following the related Cut-off Date; (35) with respect to each Adjustable Rate Mortgage Loan, the Index type; (36) a code indicating whether the Mortgage Loan is secured by a first or second lien; (37) if the Mortgage Loan is a Second Lien Mortgage Loan, the principal balance of the related first lien at the time of origination of the first lien; (38) with respect to each Second Lien Mortgage Loan, the CLTV; (39) a code indicating whether the Mortgage Loan is a MERS Mortgage Loan; (40) a code indicating whether the Mortgage Loan is an Interest Only Mortgage Loan; and (41) with respect to each Interest Only Mortgage Loan, the duration of the related interest only period.  With respect to the Mortgage Loans in the aggregate, the Mortgage Loan Schedule shall set forth the following information, as of the related Cut-off Date: (1) the number of Mortgage Loans; (2) the principal balance of the Mortgage Loans; (3) the weighted average Mortgage Interest Rate of the Mortgage Loans; (4) the

weighted average maturity of the Mortgage Loans; and (5) the weighted average FICO Score of the Mortgage Loans.

Mortgage Note: The original executed note or other evidence of the Mortgage Loan indebtedness of a Mortgagor.

Mortgaged Property: The Mortgagor's real property securing repayment of a related Mortgage Note, consisting of a fee simple in a single contiguous parcel of real property improved by a Residential Dwelling.

Mortgagor: The obligor on a Mortgage Note, the owner of the Mortgaged Property and the grantor or mortgagor named in the related Mortgage and such grantor's or mortgagor's successor(s) in title to the Mortgaged Property.

NOI: A notice of intent to foreclose delivered by the Seller to the applicable Mortgagor in compliance with applicable law.

Officer's Certificate: A certificate signed by the Chairman of the Board or the Vice Chairman of the Board or a President or a Vice President and by the Treasurer or the Secretary or one of the Assistant Treasurers or Assistant Secretaries of the Person on behalf of whom such certificate is being delivered.

Opinion of Counsel: A written opinion of counsel, who may be salaried counsel for the Person on behalf of whom the opinion is being given, reasonably acceptable to each Person to whom such opinion is addressed.

Pass-Through Transfer: The sale of some or all of the Mortgage Loans to a trust as part of a publicly issued or privately placed, rated or unrated, mortgage pass-through transaction.

Periodic Rate Cap: With respect to each Adjustable Rate Mortgage Loan and any Adjustment Date therefor, a number of percentage points per annum that is set forth in the related Mortgage Loan Schedule and in the related Mortgage Note, which is the maximum amount by which the Mortgage Interest Rate for such Mortgage Loan may increase (without regard to the Lifetime Mortgage Interest Rate Cap) or decrease (without regard to the Lifetime Mortgage Interest Rate Floor) on such Adjustment Date from the Mortgage Interest Rate in effect immediately prior to such Adjustment Date.

Person: An individual, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Pool Characteristics: The characteristics of the Mortgage Loans identified on the Mortgage Loan Schedule as set forth in Exhibit B to the related Assignment and Conveyance.

Prepayment Penalty: With respect to any Mortgage Loan, any amount payable under the terms of the related Mortgage Loan Documents with respect to any Principal Prepayment.

Primary Mortgage Insurance Policy: Each primary policy of mortgage insurance represented to be in effect pursuant to Subsection 8.02(yy).

Principal Prepayment: Any payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, which is not accompanied by an amount of

interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Purchase Price:  The price paid by the Purchaser in exchange for the Mortgage Loans purchased on the related Closing Date, calculated as provided in Section 4.

Purchase Price Percentage:  That certain purchase price percentage specified in the Term Sheet with respect to the Mortgage Loans, as adjusted as provided for therein.

Qualified Insurer:  An insurance company duly qualified as such under the laws of the states in which the Mortgaged Properties are located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided by the insurance policy issued by it, approved as an insurer by Fannie Mae and Freddie Mac.

Rate/Term Refinancing:  A Refinanced Mortgage Loan, the proceeds of which are not in excess of the existing first mortgage loan on the related Mortgaged Property and related closing costs, and were used exclusively to satisfy the then existing first mortgage loan of the Mortgagor on the related Mortgaged Property and to pay related closing costs.

Refinanced Mortgage Loan:  A Mortgage Loan the proceeds of which were not used to purchase the related Mortgaged Property.

REMIC:  A "real estate mortgage investment conduit" within the meaning of Section 860 of the Code.

Remittance Date:  The eighteenth (18th) day of each month, commencing on the eighteenth (18th) day of the month next following the month in which the related Cut-off Date occurs, or if such eighteenth (18th) day is not a Business Day, the first Business Day immediately following such eighteenth (18th) day.

REO Account:  The separate trust account or accounts, each of which shall be an Eligible Account, created and maintained pursuant to this Agreement which shall be entitled "_____, in trust for DLJ Mortgage Capital, Inc. as of [date of acquisition of title], Fixed and Adjustable Rate Mortgage Loans."

REO Disposition:  The final sale by the Seller of any REO Property.

REO Property:   A Mortgaged Property acquired as a result of the liquidation of a Mortgage Loan.

Repurchase Price:  With respect to any Mortgage Loan, a price equal to (x) the product of the greater of (i) 100% or (ii) the Purchase Price Percentage, multiplied by the Stated Principal Balance of such Mortgage Loan on the repurchase date, plus (y) accrued interest on such Stated Principal Balance at the Mortgage Interest Rate from the date interest was last distributed to the Purchaser (from payments from the related Mortgagor or from Monthly Advances) through the date prior to the date of repurchase, plus the sum of (z) the amount of any unreimbursed advance or expenditure made by the Purchaser or on its behalf in connection with the related Mortgage Loan; plus the amount of any expense reasonably incurred by the Purchaser or on its behalf for collection, inspection, maintenance, foreclosure activities, including reasonable attorney's fees incurred with respect to the related Mortgage Loan to the date of repurchase; plus any such additional amounts as may be reasonably necessary to assign such servicing

from the Purchaser to the Seller; plus any accrued and unpaid late charges, servicing fees and other fees to which the Purchaser would be entitled through the date of the Seller's repurchase.

Residential Dwelling: Any one of the following: (i) a detached single family dwelling, (ii) a two-to-four family dwelling, (iii) a unit in a condominium project, or (iv) a detached single family dwelling in a planned unit development. Mortgaged Properties that consist of the following property types are not eligible for sale to the Purchaser: (a) co-operative units, (b) log homes, (c) earthen homes, (d) underground homes, (e) mobile homes, (f) homes situated on more than ten acres of property and (g) homes which are secured by a leasehold estate.

RESPA: The Real Estate Settlement Procedures Act, as amended from time to time.

Second Lien Mortgage Loan: A Mortgage Loan secured by a second lien Mortgage on the related Mortgaged Property.

Servicing Addendum: The terms and conditions attached hereto as Exhibit 10 which will govern the servicing of the Mortgage Loans by the Seller during the Interim Servicing Period.

Servicing Advances: All customary, reasonable and necessary "out-of-pocket" costs and expenses incurred by the Seller in the performance of its servicing obligations, including, but not limited to, the cost of (i) preservation, restoration and repair of a Mortgaged Property, (ii) any enforcement or judicial proceedings with respect to a Mortgage Loan, including foreclosure actions and (iii) the management and liquidation of REO Property.

Servicing Fee: With respect to each Mortgage Loan, the amount of the servicing fee the Purchaser shall pay to the Seller, which shall, for each month, be equal to $7 per Mortgage Loan as of the first day of each month. The obligation to pay the Servicing Fee is limited to, and is payable solely from, the interest portion of the related Monthly Payment collected by the Seller. Such fee shall be payable monthly. If the Interim Servicing Period includes any partial calendar month, the Servicing Fee for such month shall be pro rated at a per diem rate based upon a 30-day month.

Servicing File: With respect to each Mortgage Loan, the file retained by the Seller consisting of originals of all documents in the Mortgage File which are not delivered to the Custodian and copies of the Legal File.

Servicing Officer: Any officer of the Seller involved in or responsible for the administration and servicing of the Mortgage Loans whose name appears on a list of servicing officers furnished by the Seller to the Purchaser upon request, as such list may from time to time be amended.

Servicing Rights: With respect to each Mortgage Loan, any and all of the following: (a) all rights to service the Mortgage Loan; (b) all rights to receive interest income on the Custodial Account and Escrow Account, servicing fees, additional servicing compensation (including without limitation any late fees, assumption fees, modification fees, prepayment fees or similar payments with respect to the Mortgage Loan, and principal and interest and income on escrow accounts or other receipts on or with respect to the Mortgage Loan), reimbursements or indemnification for servicing the Mortgage Loan, and any payments received in respect of the foregoing and proceeds thereof; (c) the right to collect, hold and disburse Escrow Payments or other similar payments with respect to the Mortgage Loans and any amounts actually collected with respect thereto and to receive interest income on such amounts to the extent permitted by applicable law; (d) all accounts and other rights to payment related to any of the property described in this paragraph; (e) possession and use of any and all Servicing Files pertaining to the Mortgage Loans or pertaining to the past, present or prospective servicing of the Mortgage Loans; (f)

all rights and benefits relating to the direct solicitation of the related Mortgagors for refinance or modification of the Mortgage Loans and attendant right, title and interest in and to the list of such Mortgagors and data relating to their respective Mortgage Loans; (g) all rights, powers and privileges incident to any of the foregoing; and (h) all agreements or documents creating, defining or evidencing any of the foregoing rights to the extent they relate to such rights and all rights of the Seller thereunder.

Servicing Transfer Date:  As specified on the related Term Sheet.

Stated Principal Balance:  As to each Mortgage Loan (i) the principal balance of such Mortgage Loan as of the related Cut-off Date after giving effect to payments of principal due on or before such date, whether or not received, minus (ii) all amounts thereafter distributed to the Purchaser with respect to the related Mortgage Loan representing payments or recoveries of principal.

Tax Service Contract:  As defined in Subsection 7.30(l) of the Servicing Addendum attached hereto as Exhibit 10.

Term Sheet:  The Term Sheet setting forth the Mortgage Loans to be purchased on the related Closing Date and the related Purchase Price in the form set forth in Exhibit 12 hereto.

Underwriting Guidelines:  The underwriting guidelines applicable to the Mortgage Loans attached as Exhibit 3 hereto, as the same shall be modified from time to time; provided, that the Seller shall promptly deliver copies of all such modifications to the Purchaser and provided further, that all material modifications thereto shall require the prior written consent of the Purchaser.

Whole Loan Transfer:  The sale or transfer of some or all of the ownership interest in the Mortgage Loans by the Purchaser to one or more third parties in whole loan or participation format.

SECTION 2.    Agreement to Purchase.  The Seller agrees to sell, and the Purchaser agrees to purchase, from time to time, Mortgage Loans and the Servicing Rights thereto, having an aggregate Stated Principal Balance on the related Cut-off Date as specified in the related Term Sheet or in such other amount as agreed by the Purchaser and the Seller as evidenced by the actual aggregate Stated Principal Balance of the Mortgage Loans accepted by the Purchaser on the related Closing Date.

SECTION 3.    Mortgage Loan Schedule.  The Seller shall deliver the related Mortgage Loan Schedule to the Purchaser at least two (2) Business Days prior to the related Closing Date.

SECTION 4.    Purchase Price.  The Purchase Price for the Mortgage Loans listed on the related Mortgage Loan Schedule shall be an amount equal to the applicable Purchase Price Percentage, multiplied by the aggregate Stated Principal Balance of the related Mortgage Loans as of the related Cut-off Date.

In addition to the Purchase Price described above, the Purchaser shall pay to the Seller, on the related Closing Date, accrued interest on each Mortgage Loan to be purchased on such Closing Date at the Mortgage Interest Rate from the related Cut-off Date through the date prior to the related Closing Date, inclusive.

With respect to each Mortgage Loan purchased, the Purchaser shall own and be entitled to receive (a) the principal portion of all Monthly Payments due after the related Cut-off Date, (b) all other recoveries of principal collected on or after the related Cut-off Date (provided, however, that the principal portion of all Monthly Payments due on or before the related Cut-off Date and collected after the related Cut-off Date shall belong to the Seller), (c) all Prepayment Penalties collected after the related

-10-

Cut-off Date, and (d) all payments of interest on the Mortgage Loans (minus that portion of any such payment which is allocable to the period prior to the related Cut-off Date) net of the Servicing Fee .

SECTION 5.    Examination of Mortgage Files.    With regard to the examination of the Mortgage Loans and Mortgage Files prior to the related Closing Date, the Purchaser shall have the right to conduct such due diligence of the Mortgage Loans as it deems appropriate.  If Purchaser declines, in accordance with its rights under the Term Sheet, to purchase a Mortgage Loan, such Mortgage Loan shall be deleted from the Mortgage Loan Schedule.  The Purchaser may, at its option and without notice to Seller, purchase all or a portion of the Mortgage Loans without conducting any partial or complete examination.  The fact that the Purchaser has conducted or has determined not to conduct any partial or complete examination of the Mortgage Files shall not affect the Purchaser's (or any of its successors') rights to demand repurchase or any other relief or remedy provided for in this Agreement.

SECTION 6.    Conveyance from Seller to Purchaser.

Subsection 6.01.        Conveyance of Mortgage Loans; Possession of Mortgage Files.

The Seller, simultaneously with the execution and delivery of this Agreement, shall deliver to the Purchaser a final Mortgage Loan Schedule with respect to the Mortgage Loans to be purchased on the applicable Closing Date.  On or before the applicable Closing Date, the Seller shall execute and deliver an Assignment and Conveyance in the form attached hereto as Exhibit 1, whereby the Seller shall sell, transfer, assign, set over and convey to the Purchaser, without recourse, but subject to the terms of this Agreement, all rights, title and interest of the Seller in and to the Mortgage Loans listed on the Mortgage Loan Schedule, together with the Servicing Rights and Mortgage Files and all rights and obligations arising under the documents contained therein.  Pursuant to Subsection 6.03 hereof, the Seller has delivered each Mortgage File to the Purchaser.  The contents of each Servicing File required to be retained by the Seller to service the Mortgage Loans pursuant to the Servicing Addendum and thus not delivered to the Purchaser are and shall be held in trust by the Seller for the benefit of Purchaser as the owner thereof.  The Seller's possession of any portion of the Servicing File is at the will of the Purchaser for the sole purpose of facilitating servicing of the related Mortgage Loan pursuant to the Servicing Addendum, and such retention and possession by the Seller shall be in a custodial capacity only.  The ownership of each Mortgage Note, Mortgage, and the contents of the Mortgage File and Servicing File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser and shall be retained and maintained, in trust, by the Seller at the will of the Purchaser in such custodial capacity only.  The Servicing File retained by the Seller pursuant to the Servicing Addendum shall be segregated from the other books and records of the Seller and shall be appropriately marked to clearly reflect the sale of the related Mortgage Loan to the Purchaser.  The Seller shall release from its custody the contents of any Servicing File retained by it only in accordance with the Servicing Addendum, except when such release is required in connection with a repurchase of any such Mortgage Loan pursuant to Subsection 8.03.

Subsection 6.02.        Books and Records.

Record title to each Mortgage and the related Mortgage Note as of the applicable Closing Date shall be in the name of the Seller in trust for the benefit of the Purchaser or one or more designees of the Purchaser, as the Purchaser shall designate.  Notwithstanding the foregoing, ownership of each Mortgage and the related Mortgage Note shall be vested solely in the Purchaser.  All rights arising out of the Mortgage Loans including, but not limited to, all funds received by the Seller after the related Cut-off Date on or in connection with a Mortgage Loan shall be vested in the Purchaser; provided, however, that all funds received on or in connection with a Mortgage Loan shall be received and held by the Seller in

trust for the benefit of the Purchaser or the assignee of the Purchaser, as the case may be, as the owner of the Mortgage Loans pursuant to the terms of the Servicing Addendum.

It is the express intention of the parties that the transactions contemplated by this Agreement be, and be construed as, a sale of the Mortgage Loans by the Seller and not a pledge of the Mortgage Loans by the Seller to the Purchaser to secure a debt or other obligation of the Seller. Consequently, the sale of each Mortgage Loan shall be reflected as a sale on the Seller's business records, tax returns and financial statements.

Subsection 6.03.        Delivery of Mortgage Loan Documents.

At least five (5) Business Days prior to the related Closing Date, the Seller shall deliver to the Custodian each of the following documents for each Mortgage Loan:

(a)  The original Mortgage Note endorsed, "Pay to the order of [_____], without recourse" and signed in the name of the Seller by an authorized officer, evidencing a complete chain of title from the originator to the Seller. In the event that the Mortgage Loan was acquired by the Seller in a merger, the endorsement must be by "[Seller], successor by merger to [name of predecessor]"; and in the event that the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the endorsement must be by "[Seller], formerly known as [previous name]";

(b)  Except as provided below and for each Mortgage Loan that is not a MERS Mortgage Loan, the original Mortgage with evidence of recording thereon.  If in connection with any Mortgage Loan that is not a MERS Mortgage Loan, the Seller cannot deliver or cause to be delivered the original Mortgage with evidence of recording thereon on or prior to the related Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Seller shall deliver or cause to be delivered to the Purchaser a photocopy of such Mortgage together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the title insurer insuring the Mortgage stating that such Mortgage has been delivered to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Purchaser upon receipt thereof by the Seller; or (ii) in the case of a Mortgage where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage with the recording information thereon certified by such public recording office to be a true and complete copy of the original recorded Mortgage.  In either case, with respect to each Mortgage Loan that is not a MERS Mortgage Loan, a copy of the recorded Mortgage with recording information thereon shall be delivered within 90 days following the applicable Closing Date. With respect to each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the Mortgage Loans and either language indicating that the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon, or a copy of the Mortgage certified by the public recording office in which such Mortgage has been recorded;

(c)  In the case of each Mortgage Loan that is not a MERS Mortgage Loan, the original Assignment of Mortgage, in blank, which assignment shall be in form and substance acceptable for recording but not recorded.  In the event that the Mortgage Loan was acquired by the Seller in a merger, the assignment must be by "[Seller], successor by merger to [name of predecessor]"; and in the event that the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the assignment must be by "[Seller], formerly known as [previous name]";

(d) Original policy of title insurance, except for those Mortgage Loans originated within 60 days before the related Closing Date, for which Mortgage Loans the Seller shall have delivered and released to the Purchaser the related binders. In addition, the Seller shall deliver to the Purchaser the original policy of title insurance within 90 days after the related Closing Date. The policy must be properly endorsed, any necessary notices of transfer must be forwarded and any other action required to be taken must be taken in order to fully protect, under the terms of the policy and applicable law, Purchaser's interest as first mortgagee;

(e) Original of all assumption, extensions and modification agreements;

(f) If required under Section 8, the original policy of primary mortgage guaranty insurance, or where such insurance is provided by a master policy, a certified true copy of the master policy and the original certificate of insurance;

(g) In the case of each Mortgage Loan that is not a MERS Mortgage Loan, the originals of all intervening Assignments of Mortgage with evidence of recording thereon, or if any such intervening Assignment of Mortgage has not been returned from the applicable recording office or has been lost or if such public recording office retains the original recorded Assignment of Mortgage, the Seller shall deliver or cause to be delivered to the Purchaser, a photocopy of such intervening Assignment of Mortgage together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the title insurer insuring the Mortgage stating that such intervening Assignment of Mortgage has been delivered to the appropriate public recording office for recordation and that such original recorded intervening Assignment of Mortgage or a copy of such intervening Assignment of Mortgage certified by the appropriate public recording office to be a true and complete copy of the original recorded intervening Assignment of Mortgage will be promptly delivered to the Purchaser upon receipt thereof by the Seller; or (ii) in the case of an intervening Assignment of Mortgage where a public recording office retains the original recorded intervening Assignment of Mortgage or in the case where an intervening Assignment of Mortgage is lost after recordation in a public recording office, a copy of such intervening Assignment of Mortgage with recording information thereon certified by such public recording office to be a true and complete copy of the original recorded intervening Assignment of Mortgage. In either case, a copy of the recorded intervening Assignment of Mortgage with recording information thereon shall be delivered within 90 days following the related Closing Date; and

(h) If the Mortgage Note or Mortgage or any other material document or instrument relating to the Mortgage Loan has been signed by a person on behalf of the Mortgagor, the original power of attorney or other instrument that authorized and empowered such person to sign bearing evidence that such instrument has been recorded, if so required in the appropriate jurisdiction where the Mortgaged Property is located (or, in lieu thereof, a duplicate or conformed copy of such instrument, together with a certificate of receipt from the recording office, certifying that such copy represents a true and complete copy of the original and that such original has been or is currently submitted to be recorded in the appropriate governmental recording office of the jurisdiction where the Mortgaged Property is located), or if the original power of attorney or other such instrument has been delivered for recording in the appropriate public recording office of the jurisdiction in which the Mortgaged Property is located but not returned from such office, a true and certified copy of such power of attorney or other instrument together with a certification from the Seller certifying that the original has been delivered for recording to such office.

In addition, in connection with the assignment of any MERS Mortgage Loan, the Seller agrees that it will cause, at its own expense, the MERS® System to indicate that such Mortgage Loans have been assigned by the Seller to the Purchaser in accordance with this Agreement by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in

such computer files the information required by the MERS® System to identify the Purchaser of such Mortgage Loans.  The Seller further agrees that it will not alter the information referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

The Seller shall forward to the Custodian original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in accordance with the Servicing Addendum within one week of their execution, provided, however, that the Seller shall provide the Custodian with a certified true copy of any such document submitted for recordation within one week of its execution, and shall provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original within sixty days of its submission for recordation.

If the Purchaser or the Custodian discovers any defect with respect to a Mortgage File, the Purchaser shall give prompt written specification of such defect to the Seller, and the Seller shall cure or repurchase such Mortgage Loan in accordance with Subsection 8.03 hereof.

SECTION 7.   Seller's Servicing Obligations.

Seller, as independent contract servicer, shall service and administer the related Mortgage Loans during the applicable Interim Servicing Period in accordance with the terms and provisions set forth in the Servicing Addendum attached hereto as Exhibit 10, which Servicing Addendum is incorporated herein by reference.

SECTION 8.   Representations, Warranties and Covenants of the Seller; Remedies for Breach.

Subsection 8.01.        Representations and Warranties Respecting the Seller.

The Seller hereby represents and warrants to the Purchaser as of the related Closing Date that:

(a)  Due Organization and Authority.  The Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of its incorporation and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each state where a Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by the Seller, and in any event the Seller is in compliance with the laws of any such state to the extent necessary to ensure the enforceability of the related Mortgage Loan in accordance with the terms of this Agreement; the Seller has the full corporate power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement (including all instruments of transfer to be delivered pursuant to this Agreement) by the Seller and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligation of the Seller; and all requisite corporate action has been taken by the Seller to make this Agreement valid and binding upon the Seller in accordance with its terms;

(b)  Ordinary Course of Business.  The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller, and the transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller pursuant to this Agreement are not subject to the bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction;

-14-

(c) <u>No Conflicts</u>.  Neither the execution and delivery of this Agreement, the acquisition of the Mortgage Loans by the Seller, the sale of the Mortgage Loans to the Purchaser or the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Seller's charter or by-laws or any legal restriction or any agreement or instrument to which the Seller is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment or decree to which the Seller or its property is subject, or impair the ability of the Purchaser to realize on the Mortgage Loans, or impair the value of the Mortgage Loans;

(d) <u>Ability to Perform</u>.  The Seller does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement.  The Seller is solvent and the sale of the Mortgage Loans will not cause the Seller to become insolvent.  The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of the Seller's creditors;

(e) <u>No Litigation Pending</u>.  There is no action, suit, proceeding or investigation pending or threatened which, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties or assets of the Seller, or in any material impairment of the right or ability of the Seller to carry on its business substantially as now conducted, or in any material liability on the part of the Seller, or which would draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of the Seller contemplated herein, or which would be likely to impair materially the ability of the Seller to perform under the terms of this Agreement;

(f) <u>No Consent Required</u>.  No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Seller of or compliance by the Seller with this Agreement or the Mortgage Loans, the delivery of a portion of the Mortgage Files to the Custodian or the sale of the Mortgage Loans to the Purchaser or the consummation of the transactions contemplated by this Agreement, or if required, such approval has been obtained prior to the related Closing Date;

(g) <u>Selection Process</u>.  The Mortgage Loans were not intentionally selected in a manner so as to affect adversely the interests of the Purchaser;

(h) <u>No Untrue Information</u>.  Neither this Agreement nor any statement, report or other document furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby contains any untrue or misleading statement of fact or omits to state a fact necessary to make the statements contained therein not misleading;

(i) <u>Sale Treatment</u>.  The Seller has determined that the disposition of the Mortgage Loans pursuant to this Agreement will be afforded sale treatment for accounting and tax purposes;

(j) <u>No Commissions to Third Parties</u>.  The Seller has not dealt with any broker or agent or anyone else who might be entitled to a fee or commission in connection with this transaction other than the Purchaser;

(k) <u>Financial Statements</u>.  The Seller has delivered to the Purchaser financial statements as to its last three complete fiscal years and any later quarter ended more than 60 days prior to the execution of this Agreement.  All such financial statements fairly present the pertinent results of operations and changes in financial position at the end of each such period of the Seller and its subsidiaries and have been prepared in accordance with generally accepted accounting principles

consistently applied throughout the periods involved, except as set forth in the notes thereto.  In addition, the Seller has delivered information as to its loan gain and loss experience for the immediately preceding three-year period, in each case with respect to mortgage loans owned by it and such mortgage loans serviced for others during such period, and all such information so delivered is true and correct in all material respects.  There has been no change in the business, operations, financial condition, properties or assets of the Seller since the date of the Seller's most recently provided financial statements that would have a material adverse effect on its ability to perform its obligations under this Agreement.  The Seller has completed any forms requested by the Purchaser in a timely manner and in accordance with the provided instructions;

(l)  Fair Consideration.  The consideration received by the Seller upon the sale of the Mortgage Loans under this Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans;

(m) [Reserved];

(n)  Good Standing.  Seller is an approved seller/servicer of residential mortgage loans for Fannie Mae and Freddie Mac with such facilities, procedures and personnel necessary for the sound servicing of such mortgage loans.  Seller is in good standing to sell mortgage loans to and service mortgage loans for Fannie Mae and Freddie Mac and no event has occurred which would make Seller unable to comply with eligibility requirements or which would require notification to either Fannie Mae or Freddie Mac. The Seller is a member of MERS in good standing, and will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the MERS Mortgage Loans for as long as such Mortgage Loans are registered with MERS;

(o)  Pool Characteristics.  The Pool Characteristics of the Mortgage Loans delivered on the related Closing Date are as set forth in Exhibit B to the Assignment and Conveyance, attached hereto; and

(p)  Origination and Servicing.  The origination and servicing practices with respect to each Mortgage Note and Mortgage have been legal and in accordance with applicable laws and regulations, and in all material respects proper and prudent in the mortgage origination and servicing business.  With respect to escrow deposits and payments that the Seller is entitled to collect, all such payments are in the possession of, or under the control of, the Seller, and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made.  All escrow payments have been collected and are being maintained in full compliance with applicable state and federal law and the provisions of the related Mortgage Note and Mortgage.  As to any Mortgage Loan that is the subject of an escrow, escrow of funds is not prohibited by applicable law and has been established in an amount sufficient to pay for every escrowed item that remains unpaid and has been assessed but is not yet due and payable.  No escrow deposits or other charges or payments due under the Mortgage Note have been capitalized under any Mortgage or the related Mortgage Note.

Subsection 8.02.          Representations and Warranties Regarding Individual Mortgage Loans.

The Seller hereby represents and warrants to the Purchaser, with respect to each Mortgage Loan, as of the related Closing Date or such other date specified herein:

(a)  Mortgage Loans as Described.  The information set forth in the Mortgage Loan Schedule is complete, true and correct;

(b) <u>Payments Current</u>.  All payments required to be made up to the related Cut-off Date for the Mortgage Loan under the terms of the Mortgage Note have been made and credited.  No payment required under the Mortgage Loan, other than a Second Lien Mortgage Loan, is 30 days or more delinquent nor has any payment under the Mortgage Loan been delinquent for 30 days or more, more than one time in the 12 months preceding the related Closing Date and, as to each Second Lien Mortgage Loan, no payment required thereunder is 30 days or more delinquent nor has any payment due thereunder been 30 days or more delinquent in the 12 months preceding the related Closing Date ;

(c) <u>No Outstanding Charges</u>.  There are no defaults in complying with the terms of the Mortgage, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable.  Except for (A) payments in the nature of escrow payments and (B) interest accruing from the date of the Mortgage Note or date of disbursement of the Mortgage proceeds, whichever is greater to the day which precedes by one month the Due Date of the first installment of principal and interest, including, without limitation, taxes and insurance payments, the Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Mortgage Loan;

(d) <u>Original Terms Unmodified</u>.  The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect, except by a written instrument which has been recorded, if necessary to protect the interests of the Purchaser and which has been delivered to the Purchaser.  The substance of any such waiver, alteration or modification has been approved by the issuer of any related Primary Mortgage Insurance Policy and the title insurer, to the extent required by such policy, and its terms are reflected on the related Mortgage Loan Schedule.  No Mortgagor has been released from any obligation under the related Mortgage, in whole or in part, except in connection with an assumption agreement approved by the issuer of any related Primary Mortgage Insurance Policy and the title insurer, to the extent required by the policy, and which assumption agreement is part of the Mortgage Loan File delivered to the Purchaser and the terms of which are reflected in the Mortgage Loan Schedule;

(e) <u>No Defenses</u>.  The Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the related Mortgage Note or the related Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto, and no Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated;

(f) <u>Hazard Insurance</u>.  Pursuant to the terms of the related Mortgage, all buildings or other improvements upon the related Mortgaged Property are insured by a generally acceptable insurer against losses resulting from fire, other hazards requiring extended coverage and such other hazards with respect to which insurance is customarily obtained in the geographic area where the Mortgaged Property is located pursuant to insurance policies conforming to the requirements of Fannie Mae and Freddie Mac.  If, upon origination of the Mortgage Loan, the Mortgaged Property was in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and flood insurance has been made available), a flood insurance policy meeting the requirements of the current guidelines of the Federal Flood Insurance Administration is in effect which policy conforms to the requirements of Fannie Mae and Freddie Mac.  All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums

thereon have been paid.  The Mortgage obligates the Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and, upon the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor.  Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development.  The hazard insurance policy is a valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement.  The Seller has not engaged in, and has no knowledge of the Mortgagor's or any subservicer's having engaged in, any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either.  No unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by the Seller or any attorney, firm or other person or entity in connection with a hazard insurance policy relating to a Mortgage Loan;

(g)  Compliance with Applicable Laws.  Any and all applicable requirements of any applicable federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws applicable to the Mortgage Loan have been complied with, and the Seller shall maintain in its possession, available for the Purchaser's inspection, and shall deliver to the Purchaser on the related Servicing Transfer Date, evidence of compliance with all such applicable requirements;

(h)  No Satisfaction of Mortgage.  The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission.  The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor;

(i)  Location and Type of Mortgaged Property.  The Mortgaged Property is a fee simple property located in the state identified in the Mortgage Loan Schedule and consists of a single parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or an individual condominium unit in a low-rise condominium project, or an individual unit in a planned unit development, provided, however, that any condominium unit or planned unit development shall conform with the applicable Fannie Mae requirements regarding such dwellings and that no residence or dwelling is a mobile home or a manufactured dwelling.  No portion of the Mortgaged Property is used for commercial purposes;

(j)  Valid First or Second Lien.  The Mortgage is a valid, subsisting enforceable and perfected first or second lien on the Mortgaged Property, including all buildings on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing.  The lien of the Mortgage is subject only to:

(1)  the lien of current real property taxes and assessments not yet due and payable;

(2)  covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to mortgage lending institutions

generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Mortgage Loan and (i) referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan or (ii) which do not adversely affect the Appraised Value of the Mortgaged Property set forth in such appraisal;

        (3)    other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property; and

        (4)    with respect to each Second Lien Mortgage a prior mortgage lien on the Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting and enforceable (A) first lien and first priority security interest with respect to each First Lien Mortgage Loan, or (B) second lien and second priority security interest with respect to each Second Lien Mortgage Loan, in either case, on the property described therein and the Seller has full right to sell and assign the same to the Purchaser. The Mortgaged Property was not, as of the date of origination of the Mortgage Loan, subject to a mortgage, deed of trust, deed to secure debt or other security instrument creating a lien subordinate to the lien of the Mortgage;

        (k) Validity of Mortgage Documents.   The Mortgage Note and the Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms subject to bankruptcy, insolvency, moratorium, reorganization and other laws of general application affecting the rights of creditors and by general principles of equity.  All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage and any other related agreement, and the Mortgage Note and the Mortgage and any other related agreement have been duly and properly executed by such parties.  No statement, tape, diskette, form, report or other document prepared by, or on behalf of, the Seller pursuant to this Agreement in connection with the transactions contemplated hereby, contains or will contain any statement that is or will be inaccurate or misleading in any material respect, and all information supplied by, on behalf of, or concerning the Mortgagor is true, accurate and complete and does not contain any statement that is or will be inaccurate or misleading in any material respect.  The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein. The Seller has prudently originated and underwritten each Mortgage Loan;

        (l)  Full Disbursement of Proceeds.   The Mortgage Loan has been closed and the proceeds of the Mortgage Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with.  All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage;

        (m) Ownership.   The Seller is the sole owner of record and holder of the Mortgage Loan. The Mortgage Loan is not assigned or pledged, and the Seller has good and marketable title thereto, and has full right to transfer and sell the Mortgage Loan therein to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement;

-19-

(n) <u>Doing Business</u>. All parties which have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (1) in compliance with any and all applicable licensing requirements of the laws of the state wherein the Mortgaged Property is located, and (2) organized under the laws of such state, or (3) qualified to do business in such state, or (4) federal savings and loan associations or national banks having principal offices in such state, or (5) not doing business in such state;

(o) <u>Title Insurance</u>. The Mortgage Loan is covered by an ALTA lender's title insurance policy or other generally acceptable form of policy of insurance acceptable to Fannie Mae or Freddie Mac, issued by a title insurer acceptable to Fannie Mae or Freddie Mac and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the first or second priority lien, as applicable, of the Mortgage in the original principal amount of the Mortgage Loan , and against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage Interest Rate and Monthly Payment, subject only to the exceptions contained in clauses (1), (2), and (3), and with respect to each Second Lien Mortgage Loan clause (4) of paragraph (j) of this Subsection 8.02. Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. The Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(p) <u>No Defaults</u>. There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and neither the Seller nor its predecessors have waived any default, breach, violation or event of acceleration. With respect to each Second Lien Mortgage Loan, (i) the prior mortgage is in full force and effect, (ii) there is no default, breach, violation or event of acceleration existing under such prior mortgage or the related mortgage note, (iii) no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration thereunder, and either (A) the prior mortgage contains a provision which allows or (B) applicable law requires, the mortgagee under the Second Lien Mortgage Loan to receive notice of, and affords such mortgagee an opportunity to cure any default by payment in full or otherwise under the prior mortgage;

(q) <u>No Mechanics' Liens</u>. There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

(r) <u>Location of Improvements; No Encroachments</u>. All improvements which were considered in determining the Appraised Value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property and no improvements on adjoining properties encroach upon the Mortgaged Property. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation;

-20-

(s) <u>Origination: Payment Terms</u>.  At the time the Mortgage Loan was originated, the originator was a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act or a savings and loan association, a savings bank, a commercial bank or similar banking institution which is supervised and examined by a Federal or State authority.  The Mortgage Interest Rate is either the fixed interest rate set forth in the Mortgage Note or is adjusted on each Interest Rate Adjustment Date as set forth in the Mortgage Note to equal the Index plus the Gross Margin, rounded up or down to the nearest 0.125%, subject to the Initial Periodic Rate Cap, the Periodic Rate Cap and the Lifetime Mortgage Interest Rate Cap.  Except with respect to Interest Only Mortgage Loans, the Mortgage Note is payable in equal monthly installments of principal and interest, which installments of interest are subject to change due to adjustments to the Mortgage Interest Rate on each Adjustable Rate Mortgage Loan, with interest calculated and payable in arrears, sufficient to amortize the Mortgage Loan fully by the stated maturity date, over an original term of not more than thirty years from commencement of amortization with respect to each Fixed Rate Mortgage Loan or over an original term of not more than thirty years from commencement of amortization with respect to each Adjustable Rate Mortgage Loan, rounded up or down to the nearest 0.125%, subject to the Initial Periodic Rate Cap, the Periodic Rate Cap and the Lifetime Mortgage Interest Rate Cap; provided, however, in the case of a balloon Mortgage Loan, the Mortgage Loan matures at least five (5) years after the first payment date thereby requiring a final payment of the outstanding principal balance prior to the full amortization of the Mortgage Loan.  The Monthly Payment on each Interest Only Mortgage Loan during the related interest-only period is equal to the product of the related Mortgage Interest Rate and the principal balance of such Mortgage Loan on the first day of each month and after such interest-only period, except with respect to Interest Only Mortgage Loans that are Adjustable Rate Mortgage Loans, such Mortgage Loan is payable in equal monthly installments of principal and interest;

(t) <u>Customary Provisions</u>.  The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure.  Upon default by a Mortgagor on a Mortgage Loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures, the holder of the Mortgage Loan will be able to deliver good and merchantable title to the Mortgaged Property.  There is no homestead or other exemption available to the Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage subject to applicable federal and state laws and judicial precedent with respect to bankruptcy and right of redemption;

(u) <u>Conformance with Underwriting Guidelines</u>.  The Mortgage Loan was underwritten in accordance with the Seller's underwriting guidelines in effect at the time the Mortgage Loan was originated, a copy of which underwriting guidelines are attached as <u>Exhibit 3</u> hereto.  The Mortgage Note and Mortgage are on forms acceptable to Fannie Mae or Freddie Mac;

(v) <u>Occupancy of the Mortgaged Property</u>.  The Mortgaged Property is lawfully occupied under applicable law, and all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities;

(w) <u>No Additional Collateral</u>.  The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to in (j) above;

(x) <u>Deeds of Trust</u>.  In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor;

(y) <u>Acceptable Investment</u>.  The Mortgagor is not in bankruptcy or insolvent and the Seller has no knowledge of any circumstances or conditions with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan;

(z) <u>Delivery of Mortgage Documents</u>.  The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered by the Seller under this Agreement have been delivered to the Purchaser or its Custodian.  The Seller is in possession of a complete, true and accurate Mortgage File in compliance with <u>Exhibit 2</u>, except for such documents the originals of which have been delivered to the Purchaser or its Custodian;

(aa)<u>Condominiums/Planned Unit Developments</u>.  If the Mortgaged Property is a condominium unit or a planned unit development (other than a de minimus planned unit development) such condominium or planned unit development project meets Fannie Mae eligibility requirements for sale to Fannie Mae or is located in a condominium or planned unit development project which has received Fannie Mae project approval and the representations and warranties required by Fannie Mae with respect to such condominium or planned unit development have been made and remain true and correct in all respects;

(bb) <u>Due on Sale</u>.  The Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the Mortgagee thereunder;

(cc)<u>Transfer of Mortgage Loans</u>.  The Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located;

(dd) <u>No Buydown Provisions; No Graduated Payments or Contingent Interests</u>.  The Mortgage Loan does not contain provisions pursuant to which Monthly Payments are paid or partially paid with funds deposited in any separate account established by the Seller, the Mortgagor or anyone on behalf of the Mortgagor, or paid by any source other than the Mortgagor nor does it contain any other similar provisions currently in effect which may constitute a "buydown" provision.  The Mortgage Loan is not a graduated payment mortgage loan and the Mortgage Loan does not have a shared appreciation or other contingent interest feature;

(ee)<u>Consolidation of Future Advances</u>.  Any future advances made prior to the related Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term.  The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first or second lien priority, as applicable, by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to Fannie Mae and Freddie Mac.  The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan;

(ff) <u>Mortgaged Property Undamaged</u>.  There is no proceeding pending or threatened for the total or partial condemnation of the Mortgaged Property.  The Mortgaged Property is undamaged by

waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended;

(gg)    Collection Practices; Escrow Deposits; Adjustable Rate Mortgage Loan Adjustments. The origination and collection practices used with respect to the Mortgage Loan have been in accordance with Accepted Servicing Practices and in all respects in compliance with all applicable laws and regulations. With respect to escrow deposits and Escrow Payments (other than with respect to Second Lien Mortgage Loans for which the mortgagee under the prior mortgage lien is collecting Escrow Payments), all such payments are in the possession of the Seller and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. All Escrow Payments have been collected in full compliance with state and federal law. An escrow of funds is not prohibited by applicable law and has been established in an amount sufficient to pay for every item which remains unpaid and which has been assessed but is not yet due and payable. No escrow deposits or Escrow Payments or other charges or payments due the Seller have been capitalized under the Mortgage or the Mortgage Note. With respect to each adjustable rate Mortgage Loan, all Mortgage Interest Rate adjustments have been made in strict compliance with state and federal law and the terms of the related Mortgage Note. Any interest required to be paid pursuant to state and local law has been properly paid and credited;

(hh)    Appraisal. The Seller has delivered to the Purchaser an appraisal of the related Mortgaged Property signed prior to the approval of the Mortgage application by a qualified appraiser who (i) is licensed in the state where the Mortgaged Property is located, (ii) has no interest, direct or indirect, in the Mortgaged Property or in any Mortgage Loan or the security therefor, and (iii) does not receive compensation that is affected by the approval or disapproval of the Mortgage Loan. The appraisal shall have been made within ninety (90) days of the origination of the Mortgage Loan, be completed in compliance with the Uniform Standards of Professional Appraisal Practice, any additional requirements set forth for appraisals in Exhibit 2 hereof, and all applicable Federal and state laws and regulations;

(ii)    Servicemembers' Relief Act. The Mortgagor has not notified the Seller, and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Servicemembers' Civil Relief Act;

(jj)    Environmental Matters. The Mortgaged Property is free from any and all toxic or hazardous substances and there exists no violation of any local, state or federal environmental law, rule or regulation. There is no pending action or proceeding directly involving any Mortgaged Property of which the Seller is aware in which compliance with any environmental law, rule or regulation is an issue; and to the best of the Seller's knowledge, nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation consisting a prerequisite to use and enjoyment of said property;

(kk)    No Construction Loans. No Mortgage Loan was made in connection with (i) the construction or rehabilitation of a Mortgaged Property or (ii) facilitating the trade-in or exchange of a Mortgaged Property;

(ll)    No Denial of Insurance. No action, inaction, or event has occurred and no state of fact exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable pool insurance policy, special hazard insurance policy, Primary Mortgage Insurance Policy or bankruptcy bond, irrespective of the cause of such failure of coverage. In connection with the placement of any such insurance, no commission, fee, or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director, or employee had a financial interest at the time of placement of such insurance;

-23-

(mm)    <u>Regarding the Mortgagor</u>.  If the Mortgage Loan is an adjustable rate mortgage loan, the Mortgagor is one or more natural persons and/or trustees for an Illinois land trust or a trustee under a "living trust" and such "living trust" is in compliance with Fannie Mae guidelines for such trusts;

(nn)    <u>Mortgagor Acknowledgment</u>.  The Mortgagor has executed a statement to the effect that the Mortgagor has received all disclosure materials required by applicable law with respect to the making of adjustable rate mortgage loans.  The Seller shall maintain such statement in the Mortgage File;

(oo)    <u>Predatory Lending Regulations; High Cost Loans</u>.  None of the Mortgage Loans are classified as (a) a "high cost" loan under the Home Ownership and Equity Protection Act of 1994 or (b) a "high cost," "threshold," "covered," or "predatory" loan under any other applicable state, federal or local law;

(pp)    <u>Texas Home Equity Loans</u>.  With respect to any Loan that is a Texas Home Equity Loan, any and all requirements of Section 50, Article XVI of the Texas Constitution applicable to Texas Home Equity Loans which were in effect at the time of the origination of the Mortgage Loan have been complied with.  Specifically, without limiting the generality of the foregoing,

(i)    all fees paid by the owner of the Mortgaged Property or such owner's spouse, to any person, that were necessary to originate, evaluate, maintain, record, insure or service the Mortgage Loan are reflected in the closing statement for such Mortgage Loan;

(ii)    the Mortgage Loan was closed only at the office of the mortgage lender, an attorney at law, or a title company;

(iii)    the Mortgagee has not been found by a federal regulatory agency to have engaged in the practice of refusing to make loans because the applicants for the loans reside or the property proposed to secure the loans is located in a certain area;

(iv)    the owner of the Mortgaged Property was not required to apply the proceeds of the Loan to repay another debt except debt secured by the Mortgaged Property or debt to a lender other than the Mortgagee;

(v)    the owner of the Mortgaged Property did not sign any documents or instruments relating to the Loan in which blanks were left to be filled in; and

(vi)    if discussions between the Mortgagee and the Borrower were conducted primarily in a language other than English, the Mortgagee provided to the owner of the Mortgaged Property, prior to closing, a copy of the notice required by Section 50(g), Article XVI of the Texas Constitution translated into the written language in which the discussions were conducted.

All notices, acknowledgments and disclosure statements required by Section 50, Article XVI of the Texas Constitution applicable to Texas Home Equity Loans are contained in the Mortgage File for each such Mortgage Loan.

(qq)    <u>Insurance</u>.  The Seller has caused or will cause to be performed any and all acts required to preserve the rights and remedies of the Purchaser in any insurance policies applicable to the Mortgage Loans including, without limitation, any necessary notifications of insurers, assignments of

policies or interests therein, and establishments of coinsured, joint loss payee and mortgagee rights in favor of the Purchaser;

(rr) <u>Simple Interest Mortgage Loans</u>.   The Mortgage Loan is not a simple interest Mortgage Loan;

(ss) <u>Prepayment Penalty</u>.   With respect to each Mortgage Loan that has a Prepayment Penalty feature, each such Prepayment Penalty is enforceable and will be enforced by the Seller, and each Prepayment Penalty is permitted pursuant to federal, state and local law. No Mortgage Loan will impose a Prepayment Penalty for a term in excess of five years from the date such Mortgage Loan was originated. Except as otherwise set forth on the Mortgage Loan Schedule, with respect to each Mortgage Loan that contains a Prepayment Penalty, such Prepayment Penalty is at least equal to the lesser of (A) the maximum amount permitted under applicable law and (B) six months interest at the related Mortgage Interest Rate on the amount prepaid in excess of 20% of the original principal balance of such Mortgage Loan;

(tt) <u>Tax Service</u>.   With respect to each Mortgage Loan, the Seller shall have obtained either (i) a life of loan transferable real estate tax service contract with a company reasonably acceptable to the Purchaser or (ii) the Seller shall reimburse to the Purchaser or its designee the cost of obtaining such contract;

(uu)   <u>Flood Certification Contract</u>.   The Seller shall have obtained a life of loan, transferable flood certification contract for each Mortgage Loan and shall assign all such contracts to the Purchaser;

(vv)   <u>CLTV; Equity LTV</u>.   No Second Lien Mortgage Loan has a CLTV in excess of 100%. No Mortgage Loan has an Equity LTV in excess of 125%;

(ww)   <u>Consent</u>.   Either (a) no consent for the Second Lien Mortgage Loan is required by the holder of the related first lien or (b) such consent has been obtained and is contained in the Mortgage File. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has taken place by the Seller or the Mortgagor, or, on the part of any other party involved in the origination of the Mortgage Loan;

(xx)   <u>Payments</u>.   Except with respect to Interest Only Mortgage Loans, principal payments on the Mortgage Loan commenced no more than sixty (60) days after the funds were disbursed in connection with the Mortgage Loan. The Mortgage Note is payable on the first day of each month and, except with respect to Interest Only Mortgage Loans, is payable in equal monthly installments of principal and interest;

(yy)   <u>LTV, Primary Mortgage Insurance Policy</u>.   The Mortgage Loan has an LTV equal to or less than 100%. Except for Mortgage Loans underwritten in accordance with a Lender Paid Mortgage Insurance Policy Program, if a Mortgage Loan has an LTV greater than 80%, the excess of the principal balance of the Mortgage Loan over 75% of the Appraised Value, with respect to a Refinanced Mortgage Loan, or the lesser of the Appraised Value or the purchase price of the Mortgaged Property, with respect to a purchase money Mortgage Loan, is and will be insured as to payment defaults by a Primary Mortgage Insurance Policy issued by a Qualified Insurer.   All provisions of such Primary Mortgage Insurance Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. No action, inaction, or event has occurred and no statement of facts exists that has, or will result in the exclusion from, denial of, or defense to coverage. Any Mortgage Loan subject to a Primary Mortgage Insurance Policy obligates the Mortgagor thereunder to maintain the Primary Mortgage Insurance Policy and to pay all premiums and charges in connection

therewith. The Mortgage Interest Rate for the Mortgage Loan as set forth on the Mortgage Loan Schedule is net of any such insurance premium;

(zz) <u>Servicing Practices</u>. The Mortgage Loan has been serviced in all material respects in compliance with those mortgage servicing practices (including collection procedures) of prudent mortgage banking institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located;

(aaa)   <u>Single-Premium Credit Life Insurance</u>.   None of the proceeds of the Mortgage Loan were used to finance single-premium credit life insurance policies; and

(bbb)   <u>Georgia Conforming Balance Loans</u>.   No Mortgage Loan which was originated on or after October 1, 2002 and before March 7, 2003 and is secured by a Mortgaged Property located in the State of Georgia has an original principal balance that is less than or equal to the applicable conforming loan limit established by Fannie Mae (as of the related origination date).

Subsection 8.03.    <u>Remedies for Breach of Representations and Warranties</u>.

It is understood and agreed that the covenants, representations and warranties of Seller set forth in this Agreement shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or lack of examination of any Mortgage File. Upon discovery by either the Seller or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser (or which materially and adversely affects the value of a Mortgage Loan or the interests of the Purchaser in the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), the party discovering such breach shall give prompt written notice to the other. For purposes of this Subsection 8.03, a breach of a representation and warranty will be deemed to have occurred notwithstanding any qualifying language in the applicable representation and warranty regarding the Seller's knowledge of such event or condition.

Within sixty (60) days (or thirty (30) days with respect to a breach of Subsection 8.02 (g), (pp), (qq), (tt) or (uu)) of the earlier of either discovery or by notice to the Seller of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans, or the interest of the Purchaser therein, the Seller shall use its best efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Seller shall, at the Purchaser's option (other than with respect to Subsection 8.02 (tt) or (uu)) repurchase at the Purchaser's option and not later than 90 days of its discovery or its receipt of notice of such Breach such Mortgage Loan at the Repurchase Price. With respect to Subsection 8.02 (tt) or (uu), the Seller shall notify the Purchaser as to any Mortgage Loans for which it has not produced requisite tax service contract or flood certification referenced in Subsection 8.02 and shall pay to the Purchaser a fee for each such Mortgage Loan equal to the fee that is customarily charged for each such contract or certification, as determined by the Purchaser in its reasonable discretion. In the event that a breach shall involve any representation or warranty set forth in Subsection 8.01 and such breach cannot be cured within sixty (60) days of the earlier of either discovery or by notice to the Seller of such breach, all of the Mortgage Loans shall, at the Purchaser's option, be repurchased by the Seller at the Repurchase Price. Any repurchase of a Mortgage Loan or Mortgage Loans pursuant to the foregoing provisions of this Subsection 8.03 shall occur on a date designated by the Purchaser and shall be accomplished by wire transfer of immediately available funds on the repurchase date to an account designated by the Purchaser.

If pursuant to the foregoing provisions the Seller repurchases a Mortgage Loan that is a MERS Mortgage Loan, the Purchaser shall either (a) cause MERS to execute and deliver an assignment of the Mortgage in recordable form to transfer the Mortgage from MERS to the Seller and shall cause such Mortgage to be removed from registration on the MERS® System in accordance with MERS' rules and regulations or (b) cause MERS to designate on the MERS® System the Seller as the beneficial holder of such Mortgage Loan.

At the time of repurchase, the Purchaser and the Seller shall arrange for the reassignment of the repurchased Mortgage Loan and the related servicing rights to the Seller and the delivery to the Seller of any documents held by the Purchaser or its designee relating to the repurchased Mortgage Loan. Upon such repurchase, the Mortgage Loan Schedule shall be amended to reflect the withdrawal of the repurchased Mortgage Loan from this Agreement.

If the Seller is required to repurchase any Mortgage Loan pursuant to this Subsection 8.03, within two (2) years of the related Closing Date, the Seller may, with the Purchaser's prior consent, which consent shall not be unreasonably withheld, substitute another Mortgage Loan for such defective Mortgage Loan, in lieu of repurchasing such defective Mortgage Loan. Any substitute Mortgage Loan shall (a) have a principal balance at the time of substitution not in excess of the principal balance of the defective Mortgage Loan (the amount of any difference, plus one month's interest thereon at the Mortgage Interest Rate borne by the defective Mortgage Loan, being paid by the Seller and deemed to be a Principal Prepayment to be deposited by the Seller in the Custodial Account), (b) have a Mortgage Interest Rate not less than, and not more than one percentage point greater than, the Mortgage Interest Rate of the removed Mortgage Loan, (c) have a remaining term to stated maturity not later than, and not more than one year less than, the remaining term to stated maturity of the removed Mortgage Loan, (d) be, in the reasonable determination of the Purchaser, of the same type, quality and character (including location of the Mortgaged Property) as the removed Mortgage Loan as if the Breach had not occurred, (e) have a Loan-to-Value Ratio at origination no greater than that of the removed Mortgage Loan and (f) be, in the reasonable determination of the Purchaser, in material compliance with the representations and warranties contained in this Agreement and described in Subsection 8.02 as of the date of substitution.

The Seller shall amend the related Mortgage Loan Schedule to reflect the withdrawal of the removed Mortgage Loan from this Agreement and the substitution of such substitute Mortgage Loan therefor. Upon such amendment, the Purchaser or its designee shall review the Mortgage File delivered to it relating to the substitute Mortgage Loan. In the event of such a substitution, accrued interest on the substitute Mortgage Loan for the month in which the substitution occurs and any Principal Prepayments made thereon during such month shall be the property of the Purchaser and accrued interest for such month on the Mortgage Loan for which the substitution is made and any Principal Prepayments made thereon during such month shall be the property of the Seller. The principal payment on a substitute Mortgage Loan due on the Due Date in the month of substitution shall be the property of the Seller and the principal payment on the Mortgage Loan for which the substitution is made due on such date shall be the property of the Purchaser.

In addition to such cure and repurchase obligation, the Seller shall indemnify the Purchaser and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the representations and warranties contained in this Section 8. It is understood and agreed that the obligations of the Seller set forth in this Subsection 8.03 to cure or repurchase a defective Mortgage Loan and to indemnify the Purchaser as provided in this Subsection 8.03 and Subsection 13.01 constitute the sole remedies of the Purchaser respecting a breach of the foregoing representations and warranties.

Any cause of action against the Seller relating to or arising out of the breach of any representations and warranties made in Subsections 8.01 or 8.02 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by the Purchaser or notice thereof by the Seller to the Purchaser, (ii) failure by the Seller to cure such breach or repurchase such Mortgage Loan as specified above, and (iii) demand upon the Seller by the Purchaser for compliance with the relevant provisions of this Agreement.

In the event that any Mortgage Loan is held by a REMIC, notwithstanding any contrary provision of this Agreement, with respect to any Mortgage Loan that is not in default or as to which no default is imminent, Purchaser may require the Seller to deliver at the Seller's expense an Opinion of Counsel to the effect that such repurchase or substitution will not (i) result in the imposition of taxes on "prohibited transactions" of such REMIC (as defined in Section 860F of the Code) or otherwise subject the REMIC to tax, or (ii) cause the REMIC to fail to qualify as a REMIC at any time.

Subsection 8.04.    Early Payment Default. In the event that, (i) the related Mortgagor becomes thirty (30) days or more delinquent with respect to a Mortgage Loan's first three (3) Monthly Payments due to the Purchaser following the applicable Closing Date, (ii) the related Mortgagor is thirty (30) days delinquent with respect to a Mortgage Loan's fourth Monthly Payment due following the applicable Closing Date and fails to make the next succeeding Monthly Payment within thirty (30) days of its Due Date or (iii) the related Mortgage Loan is in bankruptcy or litigation within the first three (3) months immediately following the applicable Closing Date (each, an "Early Payment Default Mortgage Loan"), then upon five (5) Business Days' notice to the Seller, the Seller shall immediately repurchase each such Mortgage Loan from the Purchaser at the Repurchase Price and in the manner set forth in Subsection 8.03.

Subsection 8.05.    Premium Recapture.    For Mortgage Loans that are prepaid in full during the three (3) month period from and after the related Closing Date, the Seller shall reimburse the Purchaser an amount equal to (a) the total premium paid by the Purchaser in respect of the related Mortgage Loan (Purchase Price less Stated Principal Balance as of the related Closing Date) minus (b) the amount of any Prepayment Penalty to the extent such Prepayment Penalty is (i) legally enforceable and (ii) collected and remitted to the Purchaser, in each case, with respect to such Mortgage Loan, within thirty (30) days of such prepayment in full.   Upon any assignment of a Mortgage Loan and/or this Agreement, the Purchaser may at its option retain its rights under this Subsection notwithstanding such assignment.

Subsection 8.06.    Acknowledgement of Anti-Predatory Lending Policies.  As   of the applicable Closing Date, the Purchaser has in place internal policies and procedures that expressly prohibit its purchase of any Mortgage Loan classified as (a) a "high cost" loan under the Home Ownership and Equity Protection Act of 1994 or (b) a "high cost," "threshold," "covered," or "predatory" loan under any other applicable state, federal or local law (or a similarly classified loan using different terminology under a law, regulation or ordinance imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees).

SECTION 9.    Cooperation with Pass-Through Transfers and Whole Loan Transfers

With respect to each Whole Loan Transfer or Pass-Through Transfer, as the case may be, entered into by the Purchaser, the Seller agrees to cooperate fully with the Purchaser, any prospective purchaser, any rating agency or any party to any agreement executed in connection with such Whole Loan Transfer or Pass-Through Transfer, with respect to all reasonable requests and due diligence procedures and to use its best efforts to facilitate such Whole Loan Transfer or Pass-Through Transfer, as the case may be.

The Seller acknowledges that with respect to some or all of the Mortgage Loans, the Purchaser intends to effect one or more Whole Loan Transfers and/or one or more Pass-Through Transfers. With respect to each Whole Loan Transfer or Pass-Through Transfer, as the case may be, entered into by the Purchaser, the Seller agrees:

(a) to execute all agreements executed in connection with such Whole Loan Transfer or Pass-Through Transfer that govern the servicing and administration of the Mortgage Loans (and any agreements and other documents incidental thereto) as the Purchaser shall request, which governing documents, in the case of a Pass-Through Transfer, shall contain provisions customarily included in publicly issued or privately placed rated secondary mortgage market transactions;

(b) as of the applicable closing date of the Whole Loan Transfer or Pass-Through Transfer, as the case may be, the representations and warranties contained in Sections 8.01 and 8.02 shall be automatically restated by the Seller for the benefit of the owners of the Mortgage Loans as of the date of such Whole Loan Transfer or Pass-Through Transfer, as specified in a letter from the Purchaser to the Seller (substantially in the form of Exhibit 15 hereto) indicating the date of the Whole Loan Transfer or Pass-Through Transfer and the applicable Mortgage Loans. No other document need be prepared indicating that the Seller is making such representations and warranties as to the applicable Mortgage Loans as of such date; provided that, to the extent that any facts or circumstances which did not exist on the applicable Closing Date hereunder would render any such enumerated representation and warranty materially false if made as of the date of such required restatement, in such event, Seller shall not be deemed to have restated such representation and warranty as of such date of required restatement;

(c) to cooperate fully with the Purchaser and any prospective purchaser with respect to all reasonable requests and due diligence procedures including participating in meetings with rating agencies, bond insurers and such other parties as the Purchaser shall designate and participating in meetings with prospective purchasers of the Mortgage Loans or interests therein and providing information contained in the Mortgage Loan Schedule including any diskette or other related data tapes provided as reasonably requested by such purchasers;

(d) to negotiate and execute one or more master servicing agreements between the Seller and any third party servicer which is servicing loans on behalf of the Purchaser providing for the Seller to master service such Mortgage Loans on behalf of the Purchaser;

(e) to negotiate and execute one or more subservicing agreements between the Seller and any master servicer which is generally considered to be a prudent master servicer in the secondary mortgage market designated by the Purchaser in its sole discretion after consultation with the Seller and/or one or more custodial and servicing agreements among the Purchaser or an affiliate of the Purchaser, the Seller and a third party custodian/trustee which is generally considered to be a prudent custodian/trustee in the secondary mortgage market designated by the Purchaser in its sole discretion after consultation with the Seller, in either case for the purpose of pooling the Mortgage Loans with other mortgage loans for resale or securitization;

(f) in connection with any securitization of any Mortgage Loans, to execute a pooling and servicing agreement, which pooling and servicing agreement may, at the Purchaser's direction, contain contractual provisions including, but not limited to, a 24-day certificate payment delay (54-day total payment delay), servicer advances, advances of delinquent scheduled payments of principal and interest through liquidation (unless deemed non-recoverable) and payment of compensating interest with respect to prepayment interest shortfalls (to the extent of the monthly servicing fee payable thereto), servicing and mortgage loan representations and warranties which in form and substance conform to secondary market standards for securities backed by mortgage loans similar to the Mortgage Loans and

-29-

such provisions with regard to servicing responsibilities, investor reporting, segregation and deposit of principal and interest payments, custody of the Mortgage Loans, and other covenants as are required by the Purchaser and one or more nationally recognized rating agencies for "AAA" rated mortgage pass-through transactions which are "mortgage related securities" for purposes of the Secondary Mortgage Market Enhancement Act of 1984, unless otherwise mutually agreed. At the sole option of the Purchaser, any REMIC residual class issued pursuant to any pooling agreement may be transferred to the Seller;

(g) to deliver to the Purchaser and to any Person designated by the Purchaser (a) for inclusion in any prospectus or other offering material such publicly available information regarding the Seller, its financial condition and its mortgage loan delinquency, foreclosure and loss experience and any additional information requested by the Purchaser, (b) any similar non public, unaudited financial information (which the Purchaser may, at its option and at its cost, have audited by certified public accountants) and such other information as is reasonably requested by the Purchaser and which the Seller, is capable of providing without unreasonable effort or expense, and to indemnify the Purchaser and its affiliates for material misstatements or omissions contained in such information, and (c) such statements and audit letters of reputable, certified public accountants pertaining to information provided by the Seller pursuant to clause (a) above as shall be reasonably requested by the Purchaser; and

(h) to deliver to the Purchaser, and to any Person designated by the Purchaser, such legal documents and opinions of counsel (which may be in-house opinions of counsel) in a form reasonably acceptable to the Purchaser as are customarily delivered and reasonably determined by the Purchaser to be necessary in connection with Whole Loan Transfers or Pass-Through Transfers, as the case may be, it being understood that the cost of any opinions of outside special counsel that may be required for a Whole Loan Transfer or Pass-Through Transfer, as the case may be, shall be the responsibility of the Purchaser.

The Seller shall provide to the Purchaser or issuer, as the case may be, and any other participants in such Whole Loan Transfer or Pass-Through Transfer, any and all information with respect to itself, its servicing portfolio or the Mortgage Loans and appropriate verification of information which may be reasonably available to the Seller, whether through letters of its auditors and counsel or otherwise, as the Purchaser or any such other participant shall request upon reasonable demand.

All Mortgage Loans not sold or transferred pursuant to a Whole Loan Transfer or Pass-Through Transfer shall continue to be serviced in accordance with the terms of this Agreement.

SECTION 10.  Closing.  The closing for each purchase of Mortgage Loans shall take place on the related Closing Date. At the Purchaser's option, the closing shall be either by telephone and facsimile, confirmed by letter or wire as the parties shall agree, or conducted in person, at such place as the parties shall agree.

Subsection 10.01.       Conditions to Purchaser's Obligations.

The obligation of Purchaser to purchase the Mortgage Loans on the related Closing Date is subject to the satisfaction at or prior to such Closing Date of each of the following conditions (any or all of which may be waived by Purchaser):

(a)  Representations and Warranties Correct.  Each of the representations and warranties of Seller contained in this Agreement shall be true and correct as of the related Closing Date.

(b)  Compliance with Covenants.  Seller shall have performed and be in compliance with, in all material respects, all of its respective covenants, acts, and obligations to be performed under this Agreement.

-30-

(c) <u>Closing Documents</u>. Seller shall have executed and delivered this Agreement and all other Closing Documents and all other documents required to be delivered by Seller hereunder.

(d) <u>Corporate Actions</u>.  All corporate, partnership and other acts necessary to authorize the execution, delivery, and performance of this Agreement and the consummation of the transactions contemplated hereunder shall have been taken by Seller.

(e) <u>Mortgage File</u>.  The Seller shall have delivered to the Purchaser all of the Mortgage Loan Documents in accordance with Section 6.03 and a complete Mortgage File with respect to each Mortgage Loan.

(f) <u>No Default</u>.  The Seller is not in default under or with respect to any of its obligations under this Agreement.

(g) <u>No Pending Litigation</u>.  There shall not be pending or threatened any suit, action, injunction, investigation, or other proceeding against the Seller before any court or government agency, which, in the Purchaser's good faith judgment, has resulted or is reasonably likely to result in an order staying or judgment restraining or prohibiting the transactions contemplated hereby or subjecting a party to material liability on the grounds that it has breached any law or regulation or otherwise acted improperly in connection with the transactions contemplated hereby.

SECTION 11.   <u>Closing Documents</u>.

(a) The Closing Documents for the Mortgage Loans to be purchased on the initial Closing Date shall consist of fully executed originals of the following documents:

1.   this Agreement, in four (4) counterparts;

2.   the Seller's Underwriting Guidelines, attached as <u>Exhibit 3</u> hereto;

3.   the Custodial Account Letter Agreement, in the form attached as <u>Exhibit 4</u> hereto;

4.   the Custodial Agreement, in the form of <u>Exhibit 5</u> hereto;

5.   an Escrow Account Letter Agreement, in the form of <u>Exhibit 6</u> hereto;

6.   an Officer's Certificate, in the form of <u>Exhibit 7</u> hereto;

7.   the Servicing Addendum, attached as <u>Exhibit 10</u> hereto;

8.   the Opinion of Counsel to the Seller, in the form of <u>Exhibit 11</u> hereto; and

9.   a Certificate or other evidence of merger or change of name, signed or stamped by the applicable regulatory authority, if any of the Mortgage Loans were acquired by the Seller by merger or acquired or originated by the Seller while conducting business under a name other than its present name.

(b) The Closing Documents for the Mortgage Loans to be purchased on each Closing Date shall consist of fully executed originals of the following documents:

1.   the related Assignment and Conveyance, in the form of <u>Exhibit 1</u> hereto;

2.    the Mortgage Loan Schedule, in the form of Exhibit A to the Assignment and Conveyance;

3.    the Representations and Warranties with Respect to the Pool Characteristics of the Mortgage Loans, in the form of Exhibit B to the related Assignment and Conveyance;

4.    the Mortgage Loan File, in the form of Exhibit 2 hereto;

5.    (i) a Security Release Certification, in the form of Exhibit 8 hereto (for a Seller which is a member of the Federal Home Loan Bank System), executed by the applicable regional Federal Home Loan Bank and, (ii) if applicable, in the form of Exhibit 9 hereto executed by any other person, as requested by the Purchaser, if any of the Mortgage Loans have at any time been subject to a security interest, pledge or hypothecation for the benefit of such person and (iii) if applicable a certificate of the Seller and an opinion of counsel of the Seller stating that the Mortgage Loans are not subject to any security interest, claim, pledge, hypothecation or lien; and

6.    the related Term Sheet, in the form of Exhibit 12 hereto.

The Seller shall bear the risk of loss of the Closing Documents until such time as they are received by the Purchaser or its attorneys.

SECTION 12.   Costs; Assignments.  The Purchaser shall pay any commissions due its salesmen, the expenses of its accountants and attorneys and the expenses and fees of any broker retained by the Purchaser with respect to the transaction covered by this Agreement.  All other costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans and related servicing rights including, without limitation, fees for recording intervening Assignments of Mortgage and Assignments of Mortgage, fees for obtaining tax service contracts and the legal fees and expenses of its attorneys shall be paid by the Seller.  The Seller shall be responsible for causing to occur the recordation of any intervening Assignments of Mortgage.

SECTION 13.   The Seller.

Subsection 13.01.        Indemnification.

The Seller agrees to indemnify the Purchaser and hold it harmless from and against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain in any way related to (i) any act or omission on the part of the Seller or any other person or entity in the origination, receiving, processing, funding or servicing any Mortgage Loan prior to the related Servicing Transfer Date or otherwise arising from the transfer of servicing of the Mortgage Loans provided for in this Agreement, (ii) any assertion based on, grounded upon resulting from a breach of any of the Seller's representations and warranties contained herein, (iii) the Seller's inability to effect or cause the transfer of the servicing to a successor servicer pursuant to Subsection 14.01 and (iv) the failure of the Seller to perform in any way its duties and service the Mortgage Loans in strict compliance with the terms of this Agreement.  The Seller shall immediately notify the Purchaser if a claim is made by a third party with respect to this Agreement or the Mortgage Loans, assume (with the consent of the Purchaser and with counsel reasonably satisfactory to the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered

-32-

against it or the Purchaser in respect of such claim but failure to so notify the Purchaser shall not limit its obligations hereunder.  The Seller agrees that it will not enter into any settlement of any such claim without the consent of the Purchaser unless such settlement includes an unconditional release of the Purchaser from all liability that is the subject matter of such claim.  In addition to the obligations of the Seller set forth in Section 13.01, the Purchaser may pursue any and all remedies otherwise available at law or in equity, including, but not limited to, the right to seek damages.  The provisions of this Section 13.01 shall survive termination of this Agreement.

        Subsection 13.02.      <u>Merger or Consolidation of the Seller</u>.

        The Seller shall keep in full force and effect its existence, rights and franchises as a corporation under the laws of the State of its formation except as permitted herein, and shall obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement or any of the Mortgage Loans, and to enable the Seller to perform its duties under this Agreement.

        Any Person into which the Seller may be merged or consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Seller shall be a party, or any Person succeeding to the business of the Seller, shall be the successor of the Seller hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided, however, that the successor or surviving Person shall satisfy any requirements of Section 16 with respect to the qualifications of a successor to the Seller; provided, however, that the successor or surviving Person shall be an institution (a) if such successor or surviving Person is a successor or survivor of the Seller, having a GAAP net worth of not less than $25,000,000 and (b) only if such successor or surviving Person is a successor or survivor of the Seller, (i) the deposits of which are insured by the FDIC, SAIF and/or BIF, or which is a HUD-approved mortgagee or an approved Fannie Mae/Freddie Mac seller/servicer whose primary business is in origination and servicing of first lien mortgage loans, and (ii) who is a Fannie Mae or Freddie Mac approved seller/servicer in good standing.

        Subsection 13.03.      <u>Limitation on Liability of the Seller and Others</u>.

        Neither the Seller nor any of the officers, employees or agents of the Seller shall be under any liability to the Purchaser for any action taken, or for refraining from the taking of any action, in good faith in connection with the servicing of the Mortgage Loans pursuant to this Agreement, or for errors in judgment; provided, however, that this provision shall not protect the Seller or any such person against any breach of warranties or representations made herein, or failure to perform its obligations in strict compliance with any standard of care set forth in this Agreement, or any liability which would otherwise be imposed by reason of any breach of the terms and conditions of this Agreement.  The Seller and any officer, employee or agent of the Seller may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder.  The Seller shall not be under any obligation to appear in, prosecute or defend any legal action which is not incidental to its obligation to sell, or duty to service, the Mortgage Loans in accordance with this Agreement and which in its opinion may involve it in any expenses or liability; provided, however, that the Seller may, with the consent of the Purchaser, undertake any such action which it may deem necessary or desirable in respect to this Agreement and the rights and duties of the parties hereto.  In such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities for which the Purchaser shall be liable, the Seller shall be entitled to reimbursement therefor from the Purchaser upon written demand except when such expenses, costs and liabilities are subject to the Seller's indemnification under Subsection 8.03 or 13.01.

Subsection 13.04.        Seller Not to Resign.

The Seller shall not assign this Agreement or resign from the obligations and duties hereby imposed on it except by mutual consent of the Seller and the Purchaser or upon the determination that its servicing duties hereunder are no longer permissible under applicable law and such incapacity cannot be cured by the Seller in which event the Seller may resign as servicer. Any such determination permitting the resignation of the Seller as servicer shall be evidenced by an Opinion of Counsel to such effect delivered to the Purchaser which Opinion of Counsel shall be in form and substance acceptable to the Purchaser. No such resignation shall become effective until a successor shall have assumed the Seller's responsibilities and obligations hereunder in the manner provided in Section 16.

Subsection 13.05.        No Transfer of Servicing.

The Seller acknowledges that the Purchaser has acted in reliance upon the Seller's independent status, the adequacy of its servicing facilities, plant, personnel, records and procedures, its integrity, reputation and financial standing and the continuance thereof. Without in any way limiting the generality of this Section, during the Interim Servicing Period, the Seller shall not either assign this Agreement or the servicing hereunder or delegate its rights or duties hereunder or any portion thereof, or sell or otherwise dispose of all or substantially all of its property or assets, without the prior written approval of the Purchaser, which consent will be granted or withheld in the Purchaser's sole discretion.

SECTION 14.  Default.

Subsection 14.01.        Events of Default.

The following will be Events of Default by the Seller:

(a) any failure by the Seller to remit to the Purchaser any payment required to be made under the terms of this Agreement which continues unremedied for a period of one (1) Business Day; or

(b) failure on the part of the Seller duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Seller set forth in this Agreement which continues unremedied for a period of thirty (30) days (except that such number of days shall be fifteen (15) in the case of a failure to pay any premium for any insurance policy required to be maintained under this Agreement) after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Seller by the Purchaser; or

(c) a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Seller and such decree or order shall have remained in force undischarged or unstayed for a period of sixty (60) days; or

(d) the Seller shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings of, or relating to, the Seller or of, or relating to, all or substantially all of its property; or

(e) the Seller shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations; or

-34-

(f)  failure by the Seller to be in compliance with the "doing business" or licensing laws of any jurisdiction where a Mortgaged Property is located; or

(g)  the Seller ceases to be approved by either Fannie Mae or Freddie Mac as a mortgage loan seller and servicer for more than thirty days; or

(h)  the Seller shall fail to maintain a minimum net worth (determined in accordance with GAAP) of $2,000,000; or

(i)  the Seller attempts to assign its right to servicing compensation hereunder or the Seller attempts, without the consent of the Purchaser, to sell or otherwise dispose of all or substantially all of its property or assets or to assign this Agreement or the servicing responsibilities hereunder, or to delegate its duties hereunder or any portion thereof; or

(j)  the Seller ceases to be (a) licensed to service first lien or second lien residential mortgage loans in each jurisdiction in which a Mortgaged Property is located and such licensing is required, and (b) qualified to transact business in any jurisdiction where it is currently so qualified, and where such qualification is required, but only to the extent such non-qualification materially and adversely affects the Seller's ability to perform its obligations hereunder; or

(k)  There shall have been commenced against the Seller any litigation, action, suit, arbitration, investigation or other legal or arbitrable proceedings that claims that the Seller has violated any consumer credit laws or other laws as a result of alleged predatory lending practices relating to the Seller's origination or servicing operations, and which claims an aggregate amount in excess of (or may result in liability in the aggregate in excess of) $1,000,000; or

(l)  the Seller fails to meet the eligibility criteria set forth in the last sentence of Subsection 13.02.

If any of the preceding Events of Default shall occur and be continuing, the Purchaser, by notice in writing to the Seller may, in addition to whatever rights the Purchaser may have under Subsection 8.03 and 13.01, at law or equity to damages, including injunctive relief and specific performance, terminate all the rights and obligations of the Seller as servicer under this Agreement.  On or after the receipt by the Seller of such written notice, all authority and power of the Seller to service the Mortgage Loans under this Agreement shall on the date set forth in such notice pass to and be vested in the successor appointed pursuant to Section 15.

If any of the Mortgage Loans are MERS Mortgage Loans, in connection with the termination or resignation (as described in Subsection 13.04) of the Seller hereunder, either (i) the successor to the Seller shall represent and warrant that it is a member of MERS in good standing and shall agree to comply in all material respects with the rules and procedures of MERS in connection with the servicing of the Mortgage Loans that are registered with MERS, or (ii) the predecessor Seller shall cooperate with the successor either (x) in causing MERS to execute and deliver an Assignment of Mortgage in recordable form to transfer the Mortgage from MERS to the Purchaser and to execute and deliver such other notices, documents and other instruments as may be necessary or desirable to effect a transfer of such Mortgage Loan or servicing of such Mortgage Loan on the MERS® System to the successor or (y) in causing MERS to designate on the MERS® System the successor as the servicer of such Mortgage Loan.

Subsection 14.02.    Waiver of Defaults.  The Purchaser may waive any default by the Seller in the performance of its obligations hereunder and its consequences.  Upon any such waiver of

-35-